May it please the Court, I'm John Coppell from the Appellant Staff Civil Division, U.S. Department of Justice. Good morning. Good morning, Your Honors. And I am representing the Appellant, Secretary of the Department of Agriculture, on this appeal. And with the Court's permission, I would like to reserve five minutes of my time for rebuttal. The issue before the Court on this appeal is whether the District Court erred in following the erroneous decision of the Eighth Circuit in Lane v. Department of Agriculture, in which that Court ignored sovereign immunity principles to hold that the National Appeals Division proceedings at the Department of Agriculture are under Section 554 and therefore subject to the Equal Access to Justice Act. A review of the statutory text, the legislative history, and application of sovereign immunity principles leads inescapably to the conclusion that the NADD proceedings are not under Section 554 of the APA. First of all, the NADD scheme is a freestanding, comprehensive statutory scheme that incorporates certain aspects of the APA while not incorporating others. And therefore, under the Supreme Court's holdings in Artestani v. United v. INS and Marcello v. Bonds, this is not under Section 554 of the APA. Well, why isn't the Court bound by our conclusion in Portland Audubon Society that the APA applies whenever the three requirements set forth in APA Section 554A are satisfied? Well, Your Honor, that, with all due respect, the Portland Audubon Society case really held that in that context, in the context of the Endangered Species Act, the formal adjudications that were required were under Section 554 of the APA. But that is not inconsistent with the holding here that these proceedings are not under Section 554 of the APA. And that is because the Supreme Court has recognized and Justice Ginsburg specifically, and then-Judge Ginsburg in the St. Louis Fuels case, stated that the proceedings, in order to qualify, in order to be under Section 554 for Egypt purposes, Congress must have directly intended, must have fully required the proceedings to be under Section 554. And that is not the case here. Well, if we conclude that Section 554 applies and that it's satisfied to NAB proceedings, then does Egypt apply? If Section 554 does apply to NAB proceedings? Yes. If we conclude that, does Egypt then apply? Well, if they are under Section 554, yes, then Egypt would apply. Okay. So that's --. But it's clear that they are not under Section 554 because the -- because to use the language of Marcello, what Congress has done here is really a laborious adaptation of APA procedures to the specific statutory scheme at issue with numerous deviations, and that is -- that takes these proceedings outside of Section 554. In particular, Congress in 7 U.S.C. 6997 and 6998, Congress set out specific procedures that are different from those in the APA. So are you arguing that Congress has to create an exhaustive list of procedural rights every time it creates an adjudicated body? No, Your Honor. It doesn't have to do that. If, for instance, under the -- if it had been silent, then there would be a very good argument that the APA applied. Or if it had adopted the Senate bill, which specifically said that the procedures would be under Section 554, but it didn't, under the APA, but it didn't. Instead, as we've shown in our briefs, the legislative history reveals that while the Senate would have put these proceedings under Section -- under the APA, the House disagreed with that and would have simply authorized the Secretary to adopt procedures, and then what Congress actually enacted was a hybrid of that that incorporates certain APA proceedings or APA requirements and not others. For instance, it specifically incorporates the ex parte communication prohibition and definition of 5 U.S.C. 551, which certainly would not have been necessary had the APA applied, had Section 554 applied of its own force. Well, what procedural protections from the APA do not apply to NAB proceedings, either by statute or regulations? Well, there -- then, as we've shown in the briefs, there are different procedural protections. For instance, the burden of proof is shifted to the appellant, whereas in a normal APA situation, it would be the government's burden to uphold its order or its rule. And there are also their -- it specifies the requirements for the evidentiary record. It says that the hearing officer who does not have to be an ALJ or a member of the body, the decision-making body, unlike the APA as a general rule, may take new evidence and is not bound by the facts and factual determinations of the agency. So there are numerous areas in which this departs from the normal APA scheme. And because of that, under the reasoning of Marcello and numerous other cases, the numerous cases dealing with 5 U.S.C. 559 that we've also cited in our briefs, they -- this does not qualify. There is sufficient language in the statute to make it clear that this is not under the APA. The alternative would be to require magical passwords, which the Supreme Court has said in Marcello and, again, recently in Lockhart v. United States, are not required to effect an exemption from the APA. But those Supreme Court cases, it seems to me, focused quite a lot on the fact that you've got the statute saying this will be the sole method of, you know, of dealing with. Well, in other words, there was something from Congress sort of specifically indicating that this was an exclusive procedure. Your Honor, that is certainly the --- it is correct up to a point. But when one reads the language, the crucial language from Marcello, it's clear that that is not the dispositive point. The language from Marcello is, and I quote, We cannot ignore the background of the 1952 immigration legislation, its laborious adaptation of the Administrative Procedure Act to the deportation process, the specific points at which deviations from the Administrative Procedure Act were made, the recognition in the legislative history of this adaptive technique and of the particular deviations, and the direction in the statute that the methods therein prescribed shall be the sole and exclusive procedure for deportation proceedings. So there were other factors involved in that holding beyond the INA's sole statutory provision language. So furthermore, there are other factors, such as the absence of any Congressional budget office estimates in the legislative history indicating that EJA would be -- that there would be expenses from EJA as a result of this legislation, support the view that Congress did not intend Section 554 to apply here and did not intend EJA to apply here. And moreover, with respect to sovereign immunity principles, the -- if there is ambiguity, or at least as there is here, under the principle of strict construction of sovereign immunity, waivers of sovereign immunity, there can be no conclusion that this language, that the language of the relevant statutes makes EJA applicable to NAD proceedings. Well, we have, you know, we have very specific language in the APA and the EAJA saying what three specific things are required to bring something within to permit an award of fees, and you're trying to imply an exception from that by the method that Congress has used. Congress didn't ever say that the APA won't apply. They just set up a system for the Agriculture Department, and you're saying we should imply from the way they did it that it doesn't fall within what is otherwise a very specific waiver of sovereign immunity. Well, Your Honor, I don't think that we're saying that it the Court should imply that. I think we're saying that the Court should look at the statutory text in the legislative history and conclude on the basis of that that what Congress has done here does not suffice to establish the relevant waiver of sovereign immunity with respect to this statutory scheme, because the this is it's a comprehensive statute. It's a statutory scheme that simply takes certain parts of Section 554 and certain parts of the APA, but does not sort of does not make it directly applicable, which is what the Supreme Court said is required in Ardestani. It has to be governed by the APA. I guess that you're saying, aside from Congress expressly stating that the APA Section 554 applies, what, in your view, is the minimum that Congress has to say? Well, Your Honor, even if Congress had said nothing, had simply created a statutory scheme that would be subject in the normal course of events to the APA, to Section 554, that would, even that would suffice. But what it did here was not that. Instead, it took certain aspects of the APA and then adapted them. And so certainly if Congress had said, as the Senate bill said, that it would be that these proceeding, NAD proceedings would be under the APA, that would have been enough. If Congress had simply been silent and the APA would have kicked in on that basis, that would have been enough. But what it did here was neither of those things. And instead, it created this hybrid which is not under Section 554 of the APA. Well, let me – I know that – all right. You're following Lane in the Eighth Circuit, correct? And there's nothing in – and part of the way that this came up, they said, well, there's nothing in the Ninth Circuit that says that EJRA applies, so we're taking the position that it doesn't. What is the Supreme Court precedent that you rely on that specifically contradicts the Eighth Circuit reasoning in Lane, or does anything? Well, the principal decisions are Artestani and Marcello. Those are the ones that contradict the Lane analysis, principally because the court – the Lane court really – it didn't even mention sovereign immunity principles, and also because it attached excessive importance to the language in Marcello or to the fact that in Marcello there was a specific statutory exclusion. But that is not – with all due respect to the Eighth Circuit, that is not the appropriate approach in this area. Rather, the court has to – it has to determine that the APA directly applies of its own force, and it has to apply sovereign immunity principles, recognizing that EJRA is only a partial waiver of sovereign immunity and that uncertainty must be resolved in favor of the government. Well, when Congress passes a statute that waives its sovereign immunity and sets up a system for people to recover money and puts some pre-definite requirements in there, I don't know how far the sovereign immunity argument takes you. I mean, when Congress waives its sovereign immunity, we've got to give full effect to its waiver. Well, yes, Your Honor, to the extent of the waiver. And that's where – that's why the principle of strict construction is relevant. Well, we decide that. And, I mean, we either – it's either within the waiver or it isn't. But I don't know what the notions of sovereign immunity have to do with deciding the extent of the waiver, it seems to me. Oh, Your Honor, I believe it's the same. It either means something or it doesn't. And I don't know what overarching principle of sovereign immunity governs. Once Congress decides to waive its immunity, we just need to decide how much. Yes, Your Honor. And that is precisely in that inquiry where the – where the doctrine of strict construction necessarily kicks in, because one has to decide the extent of the waiver. And if there's ambiguity, it has to be resolved in favor of the government. And I see that the point of the waiver is that it's not a matter of the waiver. Good morning. My name is Beth Baumstark, and I'm the attorney for the plaintiffs' apologies in this case who are all Montana farmers. I think it's clear that the government has not pointed to any provisions within the statute. Well, I guess maybe on the sovereign immunity, why don't you just – what language in the statutes concerning the NADD show a clear congressional intent to waive sovereign immunity? Why don't you respond to what he has to say about that? Okay. In terms of the NADD statute, sovereign immunity isn't addressed, and it doesn't need to be addressed there. The sovereign immunity in this case stems from the Equal Access to Justice Act, Section 504, the administrative prong. That provides that the government will pay costs and fees in cases in which the government's position is not substantially justified, and that it applies any time a case is under the APA. The NADD statute falls under the APA by the clear language of Sections 554 of the APA and Sections 559. Section 554 of the APA states specifically that it applies to every adjudication required by the statute to be determined on the record after opportunity for a hearing. The government concedes that the NADD statute requires the determination to be made on the record after opportunity for a hearing, and they concede that at page 12 of their brief. Further, the APA has a specific provision that states how it's going to apply to later enacted statutes such as NADD, and that's Section 559, which states that it will apply to all later enacted statutes unless the statute expressly provides otherwise. And the language of Section 554 is found on page 6 of the addendum to the APALE's brief, and I'll quote, subsequent statute may not be held to supersede or modify this subchapter except to the extent it does so expressly. There's no language within the NADD statute that expressly takes it out from under the APA. And this is the language that the Montana District Court correctly found was very clear and that the Lane decision in the Eighth Circuit followed in holding that the NADD proceedings were under Section 554 and, therefore, Section 505 EJA applied to those hearings. Well, I know that you think that Lane was correctly decided for the most part. Do you think that it was correctly decided in terms of all of its reasoning or just the bottom line? I think it was correct in its reasoning. It followed the statutory language of the APA and of EJA, and it looked at the comparisons – I don't think it needed to, but it did look at the comparisons and the procedures between the NADD statute and the procedures in the APA and determined that those differences were either additional requirements, which, and although it didn't state it, agencies are always clear to provide more procedures than those in the APA. Well, it seems that some of the language in Lane, where they're placing the burden on the government to show that the APA applies, conflicts with the Supreme Court's admonition that waivers of sovereign immunity must be strictly construed in favor of the United States. And I think he cited Ardestani. Correct. How do you respond to that? I believe, as I think the Lane court held, that a strict waiver of sovereign immunity in this case leads to a finding that the EJA applies to NADD proceedings. Any other finding by this Court would unduly narrow the waiver that Congress granted in the EJA statute, and the Ardestani case also pointed out to that principle that once a waiver of sovereign immunity is granted by Congress, courts should be wary of assuming the authority to unduly narrow or restrict the waiver that Congress has granted. And that's what it would be doing to find that EJA does not apply to NADD proceedings, both in my view and I believe in what Lane court held. Well, now, like, let's assume that we agree with you for argument's sake right now and that EJA applies, from a procedural status here, there was never a determination made about whether the government's position was substantially justified. Is that correct? No, Your Honor, that is not correct. The government has conceded that its position was not substantially justified in the administrative hearing. And basically, it has never questioned and did not contest at the district court level that the government was going to do that. Now, being wrong isn't the same as saying their position wasn't substantially. You're saying that they took the position that if EJA applies, we have to pay? That's correct. They the government has conceded both elements required for payment under EJA. That is that the farmers were the prevailing parties and that the government's position at the administrative level was not substantially justified. That, of course, is done in order to frame the case here. I'm sorry? That was done, of course, and I assume, in order to frame the case here. If the government succeeds on substantial justification, it would never straighten out whether this circuit agrees with Lane or not. If the, if the It's all right. It's just an observation. Well, if the government had ever contested that the government's position was not, I mean, was substantially justified, if they'd ever taken that position, then, obviously, we would have addressed it, we would have briefed it, and I think it's clear it wasn't. The hearing officer, in fact, found specifically that the policy under which the farmers' claims were denied was in direct contradiction of the government's own regulations. I believe that this is a very straightforward case under the terms of EJA and the APA. There are four elements which need to be met before, to find that EJA applies to NAD hearings, and the government has conceded each of these. First, that NAD hearings are adjudications under the definition of Section 551 of the APA. That's conceded on page 12 of their brief. That NAD hearings are required to be on the record after opportunity for a hearing. That's conceded on page 12 of their brief. That the position of the government is represented by counsel or otherwise, and that has been conceded that in NAD hearings, the position of the government is represented usually by agency personnel rather than by an attorney. And that Congress did not exempt the NAD proceedings from application under the APA by any express language. That's conceded on page 10, and again on page 12 and 13 of the appellant's brief. Further, all courts which have considered the issue have held that NAD hearings are under the APA, and therefore, Section 504, the administrative prong of EJA, applies. Kagan. So all courts, are you talking about one? No, Your Honor. I'm talking about the Federal District Court in Lane, the Eighth Circuit Court of Appeals in Lane, and the Montana Federal District Court. Now, it has not come up before other courts, and I think that they're going to do it. Well, it's not like it's a general Federal Circuit sweep at this point. No, no, it isn't. But, Your Honor, I think there are some good reasons why it has not come up in other courts. This takes a very determined individual with financial resources and a great deal of will to follow through and appeal the government's determination not to pay each of these. In this case, the farmers won at the administrative hearing level. Back in 2004. In 2005, we filed with the Federal District Court in Montana to appeal the denial of the each of these. We are now two and a half years later. And, you know, it's still not resolved. They've still not been paid their fees, which they, I believe, were clearly entitled to under EJA. Now, these farmers are committed farmers. They have a lot of dedication to what they feel is right, and they've been able to do it because three farmers banded together to do it. But your individual generally will not have the determination and the resources to fight a completely new adjudication that's going to go through Federal District Court and then on up to the court of appeals in order to get payment for fees and costs spent and incurred and spent in administrative adjudication. So it's not unreasonable that there aren't a few cases where this has actually gone forth. I think it's very clear, though, that when you have Federal statutes of general application, such as the EJA and the APA, that the intent is clearly that they apply uniformly throughout the United States. And in this case, I would contend that my clients, the Montana farmers, were denied because they live on the wrong side of the Montana-North Dakota border. And that, I think, is the travesty of justice. If there are no further questions. MS. GOTTLIEB There do not appear to be any further questions. Thank you for your argument. MR. GARRETT In response, again, I would emphasize that MS. GOTTLIEB Let me ask you, if you lose, have you conceded the issues as to substantial justification as she's indicated? MR. GARRETT Your Honor, I do not believe so. I believe that there would be the – that would have to be remanded and decided in the first instance by the agency rather than – it is my understanding that that has not been conceded. So turning to rebuttal, the Artestani has emphasized that the – in order to be under – to be under Section 554 for purposes of EJA, the statute in question must be, quote, directly under, end quote, and governed by, end quote, the – the APA Section 554. It is not enough that it's the functional equivalent of the APA Section 554.  GOTTLIEB I have a question. MR. GARRETT Counsel, I see on page 2 of the district court's order, it says, The United States concedes that plaintiffs are prevailing parties and do not argue the FSA's position is substantially justified. The sole question is thus whether the NAD determination resulted from an adversary  GARRETT Yes, Your Honor. I've looked at that language just now also, and my understanding is that that means that the government certainly concedes that they are prevailing parties, but it – and it didn't argue that they're – that the government's substantially justified, but that determination was never made. The latter determination was never made at the agency level where it would have to be made in the first instance. MS. GOTTLIEB Well, if you're – if you – if let's say that, you know, I mean, I can see as – there's a reason to put things in a procedural status, and obviously, I think counsel for the, you know, appellees indicated that, you know, that – you know, that they have an interest in, you know, it isn't – you know, that some – we don't get these cases on a plate that often, and obviously, both parties to some extent said, hey, we need an adjudication in the Ninth Circuit about where this basically, you know, to do that, if you took it off the plate, you know, or, you know, aren't – aren't you stuck with that? MR. GOLDSTEIN Well, no, Your Honor. I don't believe so, because here, as in Lane – in Lane, the – the Eighth Circuit also remanded for a determination with respect to the substantial justification issue after it ruled – ruled that EJA does apply to NAD proceedings, and that is – that would be essentially the same situation that we have here. KAGAN But here, the – but here, it was never – it's just like EJA doesn't apply, so we're not doing – and then you make those concessions, and then so that it'll – you know, it's – it's the clean issue coming up here. MR. GOLDSTEIN Well, again, I don't believe that that language, that the district court's language, indicates that the government actually conceded with respect to the substantial justification inquiry. It didn't argue that, and it conceded that the plaintiffs were prevailing parties, but it certainly did not concede with respect to the – to the substantial justification inquiry, and that is a matter for the agency in the first instance. But, of course, it is true that the crucial issue before the Court is – is whether EJA applies at all to these proceedings, and under the logic of Artestani and Marcello, that is not the case.  The plaintiffs are – are arguing – relying heavily on 5 U.S.C. 559, but that – what they're doing is – is basically requiring the Court to – to look for magical passwords to exempt the – a statute from the reach of the APA, and the Supreme Court said in Marcello and reiterated very recently in Lockhart v. United States that that is not the right approach to take. And, again, the – the – the INA language, the – the – that the plaintiffs rely on in Marcello must be seen in context because, as – as indicated by the – the passage that I quoted in my opening argument, the – the – the Court, the Supreme Court, looked at far more than just that – that exclusivity provision in reaching the conclusion that – that the INA was not subject to the APA. So under Artestani, Marcello, and the various other cases cited in our briefs, it is clear that sovereign immunity has not been waived with respect to NAD proceedings under proper, strict construction of the EJA's waiver of sovereign immunity. All right. Your time has expired. Thank you, Your Honor. Thank you both for your argument in this matter. The matter will now stand submitted. Jesse Montclair v. LOI, Inc., et al., 06-35006.
judges: Canby, Hall, Callahan